## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DENISE THORTON et al. | * | |
| | * | |
| v. | * | Civil Action No. WMN-13-162 |
| | * | |
| MARYLAND GENERAL HOSPITAL et al. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM AND ORDER

Before the Court is a Motion for Partial Summary Judgment filed by Defendant Maryland General Hospital, Inc. (Maryland General). ECF No. 88. The motion is fully briefed. Upon review of the motion and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be denied.

This lawsuit arises from the death of Cierra Randolph while a patient at Maryland General.[1] Briefly stated, the circumstances that led to her death are as follows. On November 4, 2010, Ms. Randolph presented to the Obstetrics and Gynecology Department at Maryland General at 37 weeks gestation for the onset of labor. The labor and delivery nurse was unable to detect any fetal heart tones and the attending obstetrician, Dr.

---

[1] The explanation as to how this state law medical malpractice suit landed in this Court and remained here is provided in an earlier memorandum opinion of this Court. See ECF No. 42.

Dana Lee, was called and remained present during the initial triage and admission process.  Dr. Lee examined Ms. Randolph, identified fetal demise and placental abruption, and ordered additional tests and the admission of Ms. Randolph.  After delivering a stillborn infant, Ms. Randolph suffered postpartum hemorrhaging resulting in significant blood loss.  The hospital staff experienced difficulty establishing and maintaining an IV line and Ms. Randolph's condition deteriorated.  She was transferred to the intensive care unit and died on November 7, 2010.

Although Plaintiffs allege breaches of the standard of care by others at Maryland General, Plaintiffs' primary allegations of negligence are directed toward Dr. Lee.  Maryland General has moved for partial summary judgment, arguing that Dr. Lee was neither the actual nor apparent agent of Maryland General and, thus, it cannot be held vicariously liable for the conduct of Dr. Lee.  Maryland General explains that Dr. Lee was not employed by Maryland General, but instead, was an employee of the People's Community Health Center (PCHC), a federal qualified health center that provides healthcare services throughout the Baltimore metropolitan area.  On the date of Ms. Randolph's admission to Maryland General, Dr. Lee was working on a scheduled basis as a laborist, pursuant to a written agreement between Maryland General and PCHC.  Under the terms of that

agreement, Dr. Lee served a weekly 12-hour shift and a monthly 24-hour shift.

In its motion, Maryland General assumed that it was undisputed that Dr. Lee was not the actual agent of Maryland General.  In making that assumption, Maryland General relied on representations of Plaintiffs' counsel made over the course of this litigation.  In an email to Maryland General's counsel dated November 15, 2012, Plaintiffs' counsel stated that he had decided to proceed against Maryland General "as being liable for [Dr. Lee's] care under the ostensible agency theory."  ECF No. 99-1.  More significantly, in a pleading submitted to the Court in connection with a motion to sever Maryland General's third party complaint against Dr. Lee, Plaintiffs acknowledged that it had been determined through discovery that Dr. Lee was not an actual employee of Maryland General.  ECF No. 27 at 3-4.  After Plaintiffs attempted to argue in their opposition to the partial summary judgment motion that Dr. Lee was an actual employee of Maryland General, Maryland General countered in its reply that Plaintiffs should be judicially estopped from asserting actual agency.

The Court agrees that Plaintiffs cannot, at this late juncture, suddenly renege on their prior representations to counsel and the Court.  Nevertheless, were the Court to consider the argument, it would readily find as a matter of law that Dr.

Lee was not an employee or actual agent of Maryland General. The agreement between MCHC and Maryland General specifically provides that:

> Each party, as an independent contractor of the other party, is responsible for paying its employees' salaries, benefits, payroll taxes, required insurance and other such costs arising from such employment, as well as abiding by other responsibilities of employment. . . .  This Agreement is not intended to and does not create a relationship of employment, joint venture, partnership, or other relationship than a contract between independent contractors.

ECF No. 89-4 ¶6A.

In addition to this express provision in the Maryland General/MCHC Agreement, the determination that Dr. Lee was not an employee of Maryland General is consistent with Maryland case law concluding that physicians with hospital privileges, like Dr. Lee, are generally not considered hospital employees. See State of Md. Comm'n on Human Relations v. Suburban Hosp., 686 A.2d 706 (Md. Ct. Spec. App. 1996).  Although decided in a different context, the court in Suburban Hospital considered the following facts in concluding that a physician with medical staff privileges at a hospital was, nonetheless, not considered an employee of that hospital: (1) the physician's work was usually done without supervision; (2) her work requires an extremely high degree of skill; (3) she was under no obligation to admit her patients to that hospital; (4) she was not paid by the hospital, nor were her benefits paid by the hospital; and

4

(5) while the hospital imposed certain standards of professional care and behavior on those with hospital privileges, it did not direct the manner in which she provided care. Id. at 721. The record here shows that those same facts are true of Dr. Lee.[2]

On the issue of whether Dr. Lee was an apparent agent of Maryland General, the Court concludes that this is a question of fact for the jury. In reaching this conclusion, the Court is guided by the Maryland Court of Appeals' decision in Mehlman v. Powell, 378 A.2d 1121 (Md. 1977). In Mehlman, the plaintiffs' decedent was experiencing breathing difficulties and was taken to Holy Cross Hospital's emergency room. The physician that treated him in the emergency room misread his electrocardiogram and sent him home without diagnosing and treating his pneumonitis and that misdiagnosis contributed to his death. In an argument similar to the argument made here by Maryland General, the hospital argued that it was not vicariously liable for the negligent acts of the emergency room doctor because the emergency room doctor that treated the decedent was an independent contractor, employed by a separate entity that operated the emergency room.

---

[2] In that Plaintiffs never suggested that Dr. Lee was an actual agent of Maryland General until they filed their opposition to the pending motion, the record on this issue is sparse in that Maryland General had no perceived need to develop the record on this issue in discovery.

In rejecting that argument, the court relied on Section 267 of the Restatement (Second) of Agency, which it had recently endorsed in B.P. Oil Corp. v. Mabe, 370 A.2d 554 (Md. 1977).  As quoted in B.P. Oil, Section 267 provides in pertinent part:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

Id., 370 A.2d at 560-61.  Applying that principle to the case before it in Mehlman, the court noted,

> When [the decedent] made the decision to go to Holy Cross Hospital, he obviously desired medical services and equally obviously was relying on Holy Cross Hospital to provide them.  Furthermore, the Hospital and the emergency room are located in the same general structure. . . .  [A]ll appearances suggest and all ordinary expectations would be that the Hospital emergency room, physically a part of the Hospital, was in fact an integral part of the institution.  It is not to be expected, and nothing put [the decedent] on notice, that the various procedures and departments of a complex, modern hospital like Holy Cross are in fact franchised out to various independent contractors.

378 A.2d at 1124.  On that basis, the court held, "that Holy Cross Hospital represented to the decedent that the staff of the Holy Cross Hospital emergency room were its employees, thereby causing the decedent to rely on the skill of the emergency room staff, and that the Hospital is consequently liable to the

6

decedent as if the emergency room staff were its employees." Id.

Maryland General would limit the holding of Mehlman exclusively to the alleged negligence of those that work in hospital emergency rooms. ECF No. 99 at 11-12. While the Court agrees with Maryland General that a hospital "is not the insurer for all actions taken by all health care providers in the hospital," id. at 12, the Court finds that the obstetrics and gynecology department of a hospital is certainly analogous to an emergency room, at least under the fact presented here. Ms. Randolph came to the hospital concerned about a lack of fetal movement and experiencing abdominal pain and contractions. From the record before the Court, it does not appear that Ms. Randolph had any prior connection with Dr. Lee until hospital staff called him to attend her. Dr. Lee arrived wearing a Maryland General identification badge and apparently nothing was said to indicate that he was not a hospital employee. As in Mehlman, appearances would have suggested and ordinary expectations would have been that he was a Maryland General employee or, at least, a jury could so conclude. See also Faya v. Almaraz, 620 A.2d 327, 339 (Md. 1993) (where plaintiffs sought to impose vicarious liability on hospital for acts of physician with operating privileges, holding that the "existence of an agency relationship is a question of fact which must be

7

submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered").

The cases on which Maryland General primarily relies, Bradford v. Jai Med. Sys. Managed Care Orgs., Inc., 93 A.3d 2 (Md. 2014) and Hetrick v. Weimer, 508 A.2d 522, 527 (Md. Ct. Spec. App. 1986), are distinguishable.  In Bradford, the plaintiff sought to hold a managed care organization (MCO) vicariously liable for the negligence of a podiatrist who participated as a specialty care provider in the MCO's network. The court found that, while the plaintiff may have had a subjective belief that the podiatrist had an employment relationship with the MCO, a jury could not reasonably find that this belief was justified or reasonable under the facts presented.  The plaintiff's subjective belief was based primarily on the fact that the podiatrist was listed as a "provider" in the MCO's member handbook.  The court noted that there were 4000 providers listed in the handbook, including hospitals and pharmacies, which precluded any reasonable belief of agency based simply on a listing in the handbook.

While the facts in Hetrick are perhaps closer to those in the instant action, the Court still finds them distinguishable. Hetrick involved an expectant couples' claims against the wife's obstetrician and the pediatrician/neonatologist who treated the plaintiffs' prematurely born infant.  The expectant mother was

admitted to Anne Arundel General Hospital and, after she was diagnosed with preeclampsia, her infant was delivered eight to nine weeks premature by caesarean section.  Shortly before the delivery, the wife met the pediatrician/neonatologist in the operating room who simply introduced himself by saying, "I'm here for the baby."  508 A.2d at 524.  It was undisputed that he had been called in by the obstetrician, not the hospital.  The infant subsequently died allegedly due to the negligence of the pediatrician/neonatologist.  When the plaintiffs sought to impose liability on the hospital based upon that alleged negligence, the trial court directed a verdict in favor of the hospital.  Id. at 527.  The Maryland Court of Special Appeals affirmed that decision, concluding that "there was simply no evidence of any words or conduct on the part of the hospital that could have induced" a belief that he was the hospital's agent.  Id.

In finding that the case before it was "easily distinguishable from Mehlman," the Court of Special Appeals noted that, in Mehlman, when the decedent made the decision to go to Holy Cross Hospital, "he obviously desired medical services and equally obviously was relying on Holy Cross Hospital to provide them."  Id. (quoting Mehlman, 378 A.2d at 1121).  In contrast, in the case before it, the wife "did not go to Anne Arundel General Hospital to seek the services of a

9

pediatrician, and there were no surrounding circumstances to indicate that the hospital was supplying pediatric services." Id. While she "may have assumed that [the pediatrician/neonatologist] was 'from the hospital,'" it was "not on the basis of anything the hospital did to foster that belief." Id. at 528. Here, Ms. Randolph came to Maryland General for the very care provided by Dr. Lee and when she met Dr. Lee, he was wearing a Maryland General identification badge.[3]

Plaintiffs also note that it would be unfair to grant summary judgment on this issue in light of the fact that Maryland General has failed to produce a corporate designee to testify on this precise issue, despite repeated attempts on the part of Plaintiffs' counsel to have it do so. In January of 2014, Plaintiffs served a notice of a Rule 30(b)(6) deposition on Maryland General seeking the designation of a corporate witness to testify on behalf of the hospital concerning "policies and procedures for non-employee physicians as to how and when said physicians are to make patients aware of their non-employment relationship with Maryland General Hospital." ECF No. 89-1 at 2. No objection was raised to this notice.

---

[3] The Court of Special Appeals also conceded that, "[i]f, for example, a hospital has residents and/or interns on its staff, that fact alone might be sufficient to create in the patient a reasonable belief that a physician who is unknown to her and who appears on the scene to examine, attend or treat her is supplied by the hospital for that purpose." 508 A.2d at 527 n.4.

Although Plaintiffs' counsel has reminded Maryland General's counsel on several occasions of the failure to make that designation, Maryland General's counsel has failed to do so. In the joint status report submitted on September 15, 2014, counsel for Maryland General acknowledged the obligation to provide such a witness for deposition. ECF No. 81.

Without providing that witness, however, Defendant filed its motion for summary judgment on that very issue that would have been the subject of that deposition and then complains that Plaintiffs, in opposing the motion, do not rely "upon facts adduced during discovery to meet the requisite evidentiary showing." ECF No. 99 at 11. In opposing the motion, Plaintiffs did vigorously object to Maryland General's "premature" filing of its summary judgment motion without first providing that witness. In its reply, Maryland General completely ignores this objection.[4] The Court finds that, just as Maryland General legitimately complains of being blindsided by Plaintiffs' late resurrection of an actual agency argument, Plaintiffs can legitimately complain that Maryland General's failure to designate a Rule 30(b)(6) witness unfairly prejudices them in their ability to oppose the pending motion.

---

[4] Maryland General does respond that its motion was not "premature" in that it was filed on the last day permitted under the Court's scheduling order. ECF No. 99 at 13. It does not respond, however, to Plaintiffs' argument concerning its failure to provide a Rule 30(b)(6) witness.

11

Accordingly, IT IS this 7th day of January, 2015, by the United States District Court for the District of Maryland, ORDERED:

1) That Defendant Maryland General Hospital's Motion for Partial Summary Judgment, ECF No. 88, is DENIED; and

2) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

                                                _____/s/_____
William M. Nickerson
Senior United States District Judge